Lenworth **BAILEY**, as the Personal Representative of the Estate of Lemar Bailey, Plaintiff,

v.

**ROCKY MOUNTAIN HOLDINGS, LLC, and Air Methods Corporation, Defendants.**

CASE NO. 13–62447–CIV–ZLOCH

United States District Court, S.D. Florida.

Signed September 23, 2015

Bruce Franklin Silver, Silver & Silver, P.A., David K. Friedman, Seth Adam Kolton, Sylvia L. Wenger, William John Cornwell, Weiss, Handler & Cornwell, PA, Boca Raton, FL, for Plaintiff.

Philip E. Rothschild, Holland & Knight, Fort Lauderdale, FL, for Defendants.

## ORDER

WILLIAM J. ZLOCH, United States District Judge

THIS MATTER is before the Court upon Defendants Rocky Mountain Holdings, LLC, and Air Methods Corporation's Motion for Final Summary Judgment (DE 30) and Plaintiff Lenworth Bailey's Motion For Partial Summary Judgment (DE 33). The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

### I. Background

The facts underlying this action are largely undisputed. The Parties agree that Defendant Air Methods Corporation (hereinafter "AMC") is authorized by the Federal Aviation Act (hereinafter "FAA"), 49 U.S.C. §§ 40101 et seq., to operate as a Part 135 air carrier providing on-demand and air ambulance services. AMC is registered with the Department of Transportation (hereinafter "DOT") to operate as a Part 298 air taxi operator providing on-demand air ambulance services. Pursuant to their Part 135 certificate and their Part 298 registration, AMC doing business in the state of Florida as Rocky Mountain Holdings, LLC, (hereinafter "RMH") is authorized to operate interstate flights as a common carrier for compensation. AMC is also authorized by its Part 135 Certificate to operate flights in the 48 contiguous states. The DOT has expressly recognized AMC d/b/a RMH as an "air carrier" that is authorized to provide interstate transportation. As a Part 135 air carrier, AMC d/b/a RMH is pervasively regulated on safety and economic matters by the FAA.

On March 17, 2013, Plaintiff's son, Lemar Bailey, sustained fatal injuries in a motor vehicle accident in Martin County, Florida. He was ejected from the vehicle and transported by Defendants by helicopter from the accident scene to St. Mary's Medical Center in West Palm Beach, Florida. Plaintiff was thereafter invoiced for the air ambulance service provided by Defendants in an amount totaling $27,975.90.

Defendants also submitted an invoice to State Farm Insurance, the insurer for the motor vehicle involved in the accident. State Farm, pursuant to Florida's Personal Injury Protection statute, Fla. Stat. § 627.735 (hereinafter "PIP"), paid 80% of what it considered to be the allowable amount, or $6,911.54, which is 200% of the Medicare Part B fee. Thereafter, Defendants submitted a claim for payment to Mr. Lemar Bailey's health insurer, Aetna, which was secondary to the PIP coverage. Aetna then paid Defendants the sum of $3,681.60. Defendants applied the amounts paid by both State Farm and Aetna to Plaintiff's outstanding balance.

The law office of Silver & Silver contacted Defendants' billing department on more than one occasion regarding the submission of the charges to Mr. Lemar Bailey's primary and secondary insurance. It is disputed whether during these conversations it was ever communicated that Plaintiff was represented as to the debt owed to Defendants. In any event, Plaintiff did not make any payments to Defendants, and the remaining balance of $17,382.76 for air ambulance services was ultimately written off as a bad debt.

By the Amended Complaint (DE 1–2), Plaintiff Lenworth Bailey, as Personal Representative of the Estate of Lemar Bailey, seeks a declaratory judgment that Defendants' billing practices violate the Florida PIP Statute, Fla. Stat. § 627.735, et seq.,(Count I) and that Defendants' ac-

tions violate Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (Count II). Additionally, Plaintiff seeks damages for Defendants' alleged violations of FDUPTA (Count III). Plaintiff further alleges violations of the Florida Consumer Collection And Practices Act, Fla. Stat. § 559.72, *et seq.*, (Count IV) and unjust enrichment (Count V).

The Parties have filed cross Motions For Summary Judgment (DE Nos. 30 & 33). Plaintiff moves for partial summary judgment on the basis that Defendants' rates for air ambulance services are allegedly excessive and in violation of various laws in the State of Florida. *See* DE 30. Defendants' contrary position is that the above-styled cause is entirely preempted by federal law, and they move for summary judgment specifically on the basis that the state law claims made herein are expressly preempted by the Airline Deregulation Act of 1978 (hereinafter "ADA"), 49 U.S.C. §§ 41713(b)(1), impliedly preempted by the Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.*, or, alternatively, that the above-styled cause should be resolved as a matter of law in their favor on the merits. *See* DE 33.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir.1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quotation omitted). Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Analysis

The Supremacy Clause of the United States Constitution invalidates state and local laws that interfere with or are contrary to the laws of Congress. "[W]here Congress has legislated concerning a subject, on which it is authorized to act, all State legislation which interferes with it, is absolutely void." *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 68, 6 L.Ed. 23 (1824). Federal law can preempt state and local laws either expressly or impliedly. *Branche v. Airtran Airways, Inc.,* 342 F.3d 1248, 1253 (11th Cir.2003); *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d

157 (1992)("Preemption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.") (citations omitted).

■ Congress manifested its intent "to rest sole responsibility for supervising the aviation industry with the federal government" when it enacted the FAA:

> [A]viation is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

*Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 368 (3d Cir.1999) (*quoting* S.Rep. No. 1811, 85th Cong., 2d Sess. 5) (1985). In 1978, Congress amended the FAA and enacted the ADA. "To ensure that the States would not undo federal deregulation with regulation of their own," *Morales,* 504 U.S. at 378, 112 S.Ct. 2031, the ADA included an express preemption clause, codified at 49 U.S.C. § 41713(b). This clause states, in pertinent part, that:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of an air carrier that may provide air transportation under this subpart.

■ 49 U.S.C. § 41713(b)(1)(emphasis added). Thus, States are expressly prohibited from enacting or enforcing any law, regulation, or other provision which relates to an air carrier's price, route, or service. "The purpose of the ADA's preemption provision was to increase 'reliance on com-

petitive market forces rather than pervasive federal regulation.'" *Koutsouradis v. Delta Air Lines, Inc.,* 427 F.3d 1339, 1343 (11th Cir.2005) (*quoting Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 335 (5th Cir. 1995) (en banc)). In *Rowe v. N.H. Motor Transport Ass'n,* the Supreme Court described the goal of Congress in the ADA's preemption provision "as helping ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" 552 U.S. 364, 371, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008)(*quoting Morales,* 504 U.S. at 378, 112 S.Ct. 2031).

■ The Supreme Court has, on more than one occasion, offered guidance regarding how this express preemption provision of the ADA is to be construed. In *Morales,* the Court held that the provision should be construed broadly and described its purposeful "sweeping nature." 504 U.S. at 384–45, 112 S.Ct. 2031. It reaffirmed the broad nature of the ADA's preemption provision three years later in *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 223, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Consequently, "the ADA preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices." *Buck v. American Airlines,* 476 F.3d 29, 34–35 (1st Cir.2007) (*citing United Parcel Serv., Inc. v. Flores–Galarza,* 318 F.3d 323, 325 (1st Cir.2003)). The Court in *Wolens* carved out an exception from the ADA's preemption provision for "suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228, 115 S.Ct. 817. For a suit not be preempted, then, plaintiffs "must demonstrate either that their state-law claims do not constitute state enforcement related to

airline prices or services, or that they can navigate the straits of the *Wolens* exception." *Buck,* 476 F.3d at 35.

Last year, in *Northwest., Inc. v. Ginsberg,* the Supreme Court clarified that state common law claims also fall within the ADA's preemptive scope. —— U.S. ——, 134 S.Ct. 1422, 1430, 188 L.Ed.2d 538 (2014). It held that these claims come "comfortably within the language of the ADA preemption provision" and that "exempting common-law claims would also disserve the central purpose of the ADA." *Id.* Indeed, only where prices, routes, or services are affected by a state law in a manner that is "tenuous, remote, or peripheral" will the same not be preempted. *Morales,* 504 U.S. at 390, 112 S.Ct. 2031.

 Notwithstanding the ADA's express preemption provision, Plaintiff contends that Florida's PIP Statute "reverse preempts" federal law in this case, pursuant to the McCarran–Ferguson Act (hereinafter "MFA"), 15 U.S.C. § 1011 *et seq.* The MFA is a federal statute directed at insulating state insurance regulation from implied preemption by federal domestic commerce legislation. *Am. Ins. Ass'n v. Garamendi,* 539 U.S. 396, 428, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003). The MFA initially declares that "*silence* on the part of the Congress shall not be construed to impose any barrier" to state regulation or taxation of the business of insurance. 15 U.S.C. § 1011 (emphasis added). It further provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Accordingly, the McCarran–Ferguson Act authorizes "reverse preemption" of federal statutes by state laws enacted to regulate the business of insurance. *ESAB Grp., Inc. v. Zurich*

*Ins. PLC,* 685 F.3d 376, 380 (4th Cir.2012). However, the Court finds that Congress has not been silent here, and the MFA therefore does not apply to reverse-preempt the ADA.

 In enacting the ADA and including in it an *express* preemption provision, Congress made plain its intent to altogether preempt state laws that regulate an air carrier's prices, routes, or services. The MFA was intended only to protect state insurance regulation from *inadvertent* intrusion by the federal government, and not to insulate the same from every federal law. *Humana Inc. v. Forsyth,* 525 U.S. 299, 308–09, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999)("We reject any suggestion that Congress intended to cede the field of insurance regulation to the states, saving only instances in which Congress expressly orders otherwise. If Congress had meant generally to preempt the field for the States, Congress could have said ... '[n]o federal statute that does not say so explicitly shall be construed to apply to the business of insurance.'"); *Barnett Bank of Marion Cnty., N.A. v. Nelson,* 517 U.S. 25, 39, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) ("Particularly the word 'silence,' indicates that the Act does not seek to insulate state insurance regulation from the reach of all federal law. Rather, it seeks to protect state regulation primarily against inadvertent federal intrusion-say, through enactment of a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part."). Indeed "when the intended effect of a federal statute is to displace state regulations, [the court] must give effect to this intent, regardless of whether an insurance company is involved." *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 116–17 (2d Cir.2001).

 As stated above, the Parties agree that Defendant AMC is an "air carrier"

within the meaning of the statute. Further, the Court finds that each of Plaintiff's state and common law claims can only be fairly characterized as directly challenging Defendants' rates for its air ambulance services. These claims, if permitted to proceed, would naturally affect the provision of Defendants' services in addition to the prices of and payment for those services. Consequently, the above-styled cause is essentially a state enforcement action having a very strong connection with or reference to a price, route, or service of an air carrier. 49 U.S.C. § 41713(b). And the Court finds that this state and common law challenge is expressly disallowed by the ADA's express preemption provision, which intentionally leaves the price of such services to the competitive market. *See, Crane v. Native Am. Ambulance, Inc.*, No. CV 06–092 TUC FRZ, 2007 WL 625917 (D.Ariz. Feb. 23, 2007)(finding class action regarding air ambulance fees was preempted by the ADA). Accordingly, the above-styled cause is altogether preempted as a matter of law and cannot proceed.

Because the Court finds that the above-styled cause is expressly preempted by the ADA, it does not reach the alternative bases for summary judgment raised in Defendants' Motion (DE 30).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Lenworth Bailey's Motion For Partial Summary Judgment (DE 33) be and the same is hereby **DENIED;**

2. Defendants Rocky Mountain Holdings, LLC, and Air Methods Corporation's Motion for Final Summary Judgment (DE 30) be and the same is hereby **GRANTED;** and

3. Final Judgment will be entered by Separate Order.