B
Normally, the existence of an affirmative defense like federal preemption of state law will not support a motion to dismiss. Quiller v. Barclays Am./Credit, Inc. , 727 F.2d 1067, 1069 (11th Cir. 1984), aff'd , 764 F.2d 1400 (11th Cir. 1985). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." Id. Though the Stouts' Amended Complaint isn't vulnerable to dismissal simply by anticipating and attempting to negate the ADA's preemptive effect on their state-law claims, a Rule 12(b)(6) dismissal is proper if "the defense clearly appears on the face of the complaint." See id.
"Congress enacted the ADA, which sought to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.' " Northwest, Inc. v. Ginsberg , 572 U.S. 273, 134 S.Ct. 1422, 1428, 188 L.Ed.2d 538 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A) ). To ensure that states wouldn't undo federal deregulation of the airline industry, the ADA included an express preemption provision prohibiting states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." Id. (quoting 49 U.S.C. § 41713(b)(1) ).
To start, this Court must determine whether Plaintiffs' claims implicate the ADA's preemption provision. Plaintiffs contend that Defendants are not protected under the preemption provision because they are not "air carriers" as defined by the ADA. Plaintiffs assert this is because the transportation at issue was entirely intrastate as opposed to interstate or foreign. This Court disagrees.
Under the ADA, an "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." Id. § 40102(a)(5). And the text of the preemption provision provides that it applies to "an air carrier that may provide air transportation." Id. § 41713(b)(1) (emphasis added). Based on the plain language of the statute, an air ambulance need only have the necessary authority to provide interstate, foreign, or mail transportation to fall within the preemption provision, and it need not provide interstate transportation in the certain instance to trigger preemption.
*1295 In addition, other courts have considered air ambulances to be air carriers even when the transportation at issue occurred within state lines. See Schneberger v. Air Evac EMS, Inc. , No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D. Okla. Mar. 15, 2017) ; Bailey v. Rocky Mountain Holdings, LLC , 136 F.Supp.3d 1376, 1378 (S.D. Fla. 2015) (though defendant transported plaintiff within the state of Florida, defendant was nonetheless recognized as an "air carrier" under the ADA); Med-Trans Corp. v. Benton , 581 F.Supp.2d 721, 732 (E.D.N.C. 2008) ("[P]laintiff is subject to subpart 49 U.S.C. § 41101 and holds a 'Part 135' certificate from the Federal Aviation Administration, which authorizes plaintiff to operate in '[t]he 48 contiguous United States and the District of Columbia.' Plaintiff is an air carrier for purposes of the ADA.").
This Court must interpret the ADA's preemption provision broadly, encompassing "state enforcement actions having a connection with or reference to airline 'rates, routes, or services.' " Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting 49 U.S.C. § 1305(a)(1) ).[1] State common-law rules are also preempted because they are "provisions having the force and effect of law" similar to state statutes and regulations. Ginsberg , 134 S.Ct. at 1430. "What is important, therefore, is the effect of a state law, regulation, or provision, not its form." Id.
But the ADA's preemption provision doesn't shelter air carriers from suits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Am. Airlines, Inc. v. Wolens , 513 U.S. 219, 228-29, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) ("[T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law." (internal quotation marks omitted) (citation omitted) (alteration in original) ). As a result, the ADA generally permits adjudication of state-law breach-of-contract claims. Id. at 233, 115 S.Ct. 817.
Because contract law doctrines vary from state to state, whether a contract claim is preempted depends on the extent to which the doctrine is employed to effectuate the public policies of the given state rather than to enforce the intent of the parties. See Ginsberg , 134 S.Ct. at 1432. For example, as to good faith and fair dealing, "some states use the doctrine 'to effectuate the intentions of parties or to protect their reasonable expectations,' ... [while] other States clearly employ the doctrine to ensure that a party does not 'violate community standards of decency, fairness, or reasonableness.' " Id. at 1431. Ultimately, to avoid preemption, a claim must be confined to the parties' bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." Wolens , 513 U.S. at 232, 115 S.Ct. 817.
In this case, the ADA's preemption provision is implicated as applied to Defendants because Defendant Med-Trans is an "air carrier" under the Act and Defendant AMGH "owns, controls, and directs the finances and operations of Defendant Med-Trans Corporation." ECF No. 20 at 7. Defendant Med-Trans holds a *1296 Part 135 "Air Carrier Certificate" from the Federal Aviation Administration certifying that it is "authorized to operate as an air carrier"-it certainly may provide interstate air transportation even if it didn't do so in this case. ECF No. 46-1.[2] Moreover, Plaintiffs' claims for unjust enrichment, breach of the implied covenant of good faith and fair dealing, and breach of implied-in-fact contract directly relate to the price of Defendants' air carrier services. The question remains as to whether Plaintiffs' claims are based on state-imposed obligations having the "force and effect of law" or whether they're based on the parties' own undertakings. This Court will address each claim in turn.
1
As to the unjust enrichment claim, Plaintiffs assert Defendants were unjustly enriched because Plaintiffs paid Defendants fees beyond what they were entitled to receive. ECF No. 20 at 18-19. Plaintiffs further allege Defendants obtained these payments by "fraud, coercion, or abuse of confidential relationship." Id. But Defendants contend that Plaintiffs' claim is predicated on the enforcement of "community standards of decency," not an agreement between the parties. ECF No. 27 at 23 (quoting Ginsberg , 134 S.Ct. at 1431.). This Court agrees.
Under Florida law, a claim for unjust enrichment is not based on the parties' agreement but rather an agreement created by law. See, e.g., Tooltrend, Inc. v. CMT Utensili, SRL , 198 F.3d 802, 806 (11th Cir. 1999) ("Florida courts have made clear that an unjust enrichment claim may be brought whether or not the parties had any previous contact at all."). An unjust enrichment claim provides a mechanism for recovery when the court deems it unjust for one party to have received a benefit without paying compensation for the value thereof. Id. at 805. ("Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it."). Since a claim for unjust enrichment is not based on the parties' "self-imposed obligations," it constitutes a state-imposed obligation and is therefore preempted. See Bailey , 136 F.Supp.3d at 1382 (finding that a claim for unjust enrichment is preempted by the ADA as a matter of law); see also Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc. , 972 F.Supp. 665, 673 (N.D. Ga. 1997) (dismissing a claim for unjust enrichment because it is preempted under the FAAAA's preemption provision which is identical to the ADA's preemption provision). Accordingly, Plaintiffs' unjust enrichment claim is properly dismissed.
2
Next, Plaintiffs claim "Defendants breached the contracts implied in fact, including the implied covenant of good faith and fair dealing, by charging inflated prices that had no reasonable relationship *1297 to the services rendered." ECF No. 20 at 17. Though Plaintiff doesn't set out allegations constituting a separate claim for breach of this covenant, this Court simply notes that any claim allegedly based on "the implied covenant of good faith and fair dealing" fails under Florida law.
"A claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc. , 785 So.2d 1232, 1234 (Fla. 4th DCA 2001) ; see also Resnick v. AvMed, Inc. , 693 F.3d 1317, 1329 (11th Cir. 2012) ; QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc. , 94 So.3d 541, 548 (Fla. 2012). In this case, Plaintiffs don't allege a breach of an express term of the contract. In fact, their case explicitly relies on an unspecified, implied contractual term. Accordingly, any claim for breach of the implied covenant of good faith and fair dealing is also properly dismissed.
3
As to their breach-of-contract claim, Plaintiffs contend that a contract implied in fact arose through the Defendants' offer of air ambulance service and the Plaintiffs' acceptance of that service. See ECF No. 20 at 16-17. When consciously electing not to disclose their rates, Defendants were aware that they were entering into an implied contract with an undefined essential term that would have to be determined by a court if their rates "were excessively high and unreasonable." Id. According to Plaintiffs, Defendants "were obligated to charge the fair and reasonable value of the services ... they provided." Id. at 17. Defendants' breached the alleged agreement when they charged "inflated prices that had no reasonable relationship to the services rendered." Id. Now Plaintiffs seek damages in the amount that Defendants charged over "the reasonable and customary rate for said services." Id. at 18.
Defendants assert this Court's determination of the "reasonable and customary rate" would constitute impermissible rate-setting based on state common law. ECF No. 27 at 23. And Defendants argue that this claim falls outside the "routine breach of contract" exception to preemption outlined in Wolens , because Defendants didn't voluntarily agree to accept a rate lower than the amount charged. According to Defendants, forcing them to accept a lower rate results in the imposition of a state policy-based standard. See ECF No. 32 at 7-10. This Court agrees.
Under Florida law, a contract implied in fact "is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." Ship Constr. & Funding Servs. (U.S.A.), Inc. v. Star Cruises, PLC , 135 F. App'x 218, 220 (11th Cir. 2005) (quoting Commerce P'ship v. Equity Contracting Co., Inc. , 695 So.2d 383, 385-86 (Fla. 4th DCA 1997) ). Contracts implied in fact "rest on the assent of the parties." Commerce P'ship, Inc. , 695 So.2d at 386. Implied-in-fact contracts commonly arise "where one person performs services for another at his request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances which give rise to the presumption of a promise to pay for them," and "reasonable compensation may be recovered." Lewis v. Meginniss , 30 Fla. 419, 12 So. 19, 21 (Fla. 1892) ; accord Gem Broad., Inc. v. Minker , 763 So.2d 1149, 1151 (Fla. 4th DCA 2000).
Other courts have allowed implied-in-fact contract claims to proceed at this stage, concluding that they weren't *1298 preempted by the ADA or it was too soon to tell given the undeveloped record. See, e.g., Adams v. Air Methods Corp. , No. 3:15-CV-1683-TLW, 2016 WL 7115905, at *3 (D.S.C. Aug. 12, 2016). And in Wagner v. Summit Air Ambulance, LLC. , the district court denied the defendant's motion to dismiss an implied-in-fact contract claim, reasoning that the plaintiffs had alleged sufficient facts for the claim to fit within the Wolens and Ginsberg exception to ADA preemption. No. CR-17-57-BU-BMM, 2017 WL 4855391, at *4 (D. Mont. Oct. 26, 2017) (citing Wolens , 513 U.S. at 232-33, 115 S.Ct. 817 ; Ginsberg , 134 S.Ct. at 1433 ).
The plaintiffs in Wagner alleged that the defendant air ambulance company "knowingly incorporated a consideration term of 'reasonable worth' by their self-imposed and voluntary undertaking to omit a specific consideration term." Id. at *5. They further alleged that the air ambulance company had previously transported numerous patients within the state, knew that a contract was being formed, and opted not to specify the price term-an essential element of the contract-with the knowledge that state law imposes a reasonable rate absent a specified price. Id.
The court in Wagner reasoned that preemption of suits seeking to enlarge an agreement beyond vindication of the parties' understanding doesn't bar parties from electing the price term as "the reasonable and customary rate" in the absence of a specified price at the time of contracting. Id. at *4 ("Nothing in the ADA prohibits an air carrier from opting for a default term of consideration."). And it noted that "[n]othing in the language of the ADA presents a bar to recovery where an air carrier contracts for one amount, and bills for another amount." Id. at *5.
This Court isn't bound by the Montana district court and finds the factual allegations at issue in this case distinguishable from those alleged in Wagner . Moreover, this Court agrees with the district court's reasoning in Schneberger v. Air Evac EMS, Inc. , which held that "[r]equiring [the air carrier] to accept less [than the full amount of charges billed] because of a policy-based inquiry-what's a reasonable rate for air ambulance services?-necessarily imposes upon them a rate that 'the state dictates' rather than one that 'the [air carrier] itself undertakes.' " 2017 WL 1026012, at *5 (W.D. Okla. Mar. 15, 2017). Imposing state-policy based rates is exactly what the ADA's preemption provision seeks to prevent. Accordingly, Plaintiffs' claim for breach of an implied-in-fact contract is preempted by the ADA.
C
As this Court has found the ADA preempts Plaintiffs' state-law claims, Plaintiffs also request a declaration that the ADA is unconstitutional. Plaintiffs assert the ADA's preemption provision as applied to their claims (1) is "an arbitrary and irrational act of Congress," ECF No. 20 at 21, (2) it violates their Fifth Amendment right to procedural due process by preventing Plaintiffs from challenging "the reasonableness of Defendants' unilateral pricing," id. at 23-24, (3) it denies "Plaintiffs' rights to substantive due process," id. at 24, (4) it exceeds Congress's authority under the Commerce Clause, id. at 26, and (5) it denies Plaintiffs' Seventh Amendment right to a jury trial, ECF No. 28 at 37. None of these arguments have merit.
To start, the Government's response, ECF No. 47, persuasively describes how the ADA is rationally related to Congress's goal of deregulating the air transportation industry to "ensure transportation rates, routes, and services ...
*1299 reflect maximum reliance on competitive market forces." Id. at 31-32 (internal quotation marks and citation omitted) (quoting Rowe v. N.H. Motor Transp. Ass'n , 552 U.S. 364, 371, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) ). Moreover, the ADA provides Plaintiffs with the opportunity to challenge Defendants' pricing practices by filing complaints of unfair or deceptive practices through the Department of Transportation. See 49 U.S.C. § 41712(a) ; Musson Theatrical, Inc. v. Fed. Exp. Corp. , 89 F.3d 1244, 1250-51 (6th Cir. 1996) (noting that any person may file a complaint concerning "unfair and deceptive practices" with the Department of Transportation). And nothing about federal preemption of Plaintiffs' state-law claims under the ADA "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," as to implicate Plaintiffs' substantive due process rights. United States v. Salerno , 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
Next, as discussed above, Congress is well within its Commerce Clause authority to deregulate Defendants' industry, even if this specific transport was wholly intrastate. See also Gonzales v. Raich , 545 U.S. 1, 17, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Congress may "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."). This Court is unpersuaded by Plaintiffs' contention that preempting their state-law claims-effectively forcing them to pay the balance of Defendants' bill for air ambulance service-is analogous to Congress compelling individuals to buy health insurance under the Affordable Care Act. See Nat'l Fed'n of Indep. Bus. v. Sebelius , 567 U.S. 519, 552, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012). Plaintiffs' Amended Complaint essentially alleges they were ready and willing to engage in commerce by accepting air ambulance services from Defendants in exchange for payment amounting to some unspecified, reasonable rate. Congress did not compel Plaintiffs to engage in this commerce.
Finally, Plaintiffs assert the preemption provision as applied to their state-law claims violates their Seventh Amendment right to a jury trial. But "[n]othing i[n] its text o[r] history indicates that the Seventh Amendment protects the existence of certain common-law causes of action." Martin v. Telectronics Pacing Sys., Inc. , 105 F.3d 1090, 1100 (6th Cir. 1997) (emphasis added) (citation omitted). "The Seventh Amendment protects a litigant's right to a jury trial where there exists a cause of action at common law, or one analogous thereto, for legal relief, where the amount in controversy exceeds twenty dollars." Id. But "[h]ere, as plaintiffs' causes of action have been preempted by federal law, they have no 'suit[ ] at common law' and the Seventh Amendment's guarantees are not implicated." Id. (alteration in original). Indeed, "Congress surely can preempt a state cause of action, be it legal or equitable: This is the very nature of federal supremacy." Spinelli v. Gaughan , 12 F.3d 853, 858 (9th Cir. 1993). "Once Congress has chosen to preempt the state claim, it's free to give affected individuals a full federal claim, a claim providing only for remedies limited to equity, a damages claim only, or no claim at all." Id. "The Seventh Amendment, again, does not stand in the way." Id.
II
In sum, Defendants' Motion to Dismiss, ECF No. 27, is GRANTED . Plaintiffs' state-law claims are preempted by the ADA and, based on established precedent, Plaintiffs' constitutional attacks on the ADA are without merit and insufficient to breathe life back into their case.
*1300 The Clerk is directed to enter judgment stating, "Plaintiffs' claims are DISMISSED with prejudice as preempted by the Airline Deregulation Act." The Clerk shall close the file.
SO ORDERED on May 2, 2018.

Statute 1305(a)(1) was the ADA's preemption provision prior to recodification in 1994. The revision to the provision "was not meant to affect the provision's meaning." Ginsberg , 134 S.Ct. at 1429.

The Court may take judicial notice of certain facts when ruling on a Rule 12(b)(6) motion to dismiss without conversion to the summary judgment stage. See Bryant v. Avado Brands, Inc. , 187 F.3d 1271, 1280 (11th Cir. 1999). Judicial notice of a public record is proper when "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." Horne v. Potter , 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b) ). After affording the parties an opportunity to brief the issue, this Court takes judicial notice of the existence of Med-Trans's Part 135 no. M3XA227H, "Air Carrier Certificate" issued by the FAA. The certification may be verified through a search in the FAA website.