NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0472n.06

No. 19-4103

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 10, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BILLY BYLER, et al., | ) |
| Plaintiff-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| AIR METHODS CORP., et al., | ) |
| Defendant-Appellees. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: CLAY, ROGERS, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. Plaintiffs Billy Byler and Donald Reid were each airlifted to a hospital after suffering severe injuries. They later received large bills from Air Methods Corporation for the costs of the helicopter ride, but Air Methods has not filed suit to recover its charges. Byler and Reid sued Air Methods and its parent company, Rocky Mountain Holdings, LLC, as part of a putative class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs allege that they formed implied-in-fact contracts with Air Methods and that Air Methods breached its obligations under those contracts to charge reasonable rates. The district court properly dismissed this claim, however, as plaintiffs' complaint merely recites the elements of an implied-in-fact contract and fails to allege facts that, taken as true, would establish that plaintiffs assented to the terms of a contract with Air Methods. In the alternative, plaintiffs alleged that no contracts were ever formed with Air Methods and asked the district court to issue a declaratory judgment that they have no obligation to pay the amounts charged by Air Methods. The district

court dismissed that claim as well, declining to exercise its declaratory jurisdiction. Plaintiffs, however, have adequately pled a basis for declaratory relief, and the facts alleged strongly favor the exercise of such jurisdiction. A remand is therefore required.

Defendant Air Methods Corporation ("Air Methods") provides air ambulance services in Ohio and other states. Following a serious accident, Air Methods transported plaintiff Billy Byler by helicopter 36 miles to a hospital in Youngstown, Ohio. Air Methods later sent Byler a bill for $25,344.30. Byler's insurance covered $19,388.39, leaving a balance of $5,955.91. Byler has paid $2,154.28 out of pocket towards that balance. The other named plaintiff in this case, Donald Reid, was airlifted by Air Methods to a hospital 31 miles away in Cleveland, Ohio. Reid was charged $48,308.33. The complaint does not specify how much, if any, Reid has paid to Air Methods. Reid alleges that after he was told of the charges, Air Methods refused to bill Reid's insurance company until Reid agreed to accept financial responsibility for any remaining balance.

Plaintiffs allege that Air Methods has threatened or initiated collection efforts against them to recover the portion of its bills not covered by insurance, a practice known as "balance billing." In general, plaintiffs describe Air Methods' collection efforts to include lawsuits based on state-law breach-of-contract theories, though no such lawsuits have yet been brought against the named plaintiffs.

In February 2017, Byler and Reid brought a putative class action lawsuit against Air Methods and Rocky Mountain in the federal district court for the Northern District of Ohio. Plaintiffs asserted claims for "breach of implied contract," "unjust enrichment," and "declaratory and injunctive relief."[1] Air Methods moved to transfer or stay the case in light of a similar class

---

[1] Federal jurisdiction was asserted under the Class Action Fairness Act, 28 U.S.C. § 1332(d), on the grounds that "[t]he matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5 million and is a class action in which Plaintiffs and Class members are citizens of states different from Defendants." No question on appeal has been raised regarding the jurisdiction of the district court.

action lawsuit filed against it in the District of Colorado. *See Scarlett v. Air Methods Corp.*, No. 16-cv-02723, 2018 WL 2322075 (D. Colo. May 22, 2018). The district court granted Air Methods' motion to stay the case until the resolution of the Colorado action. *See Byler v. Air Methods Corp.*, No. 1:17-cv-236, 2017 WL 10222371, at *5 (N.D. Ohio Aug. 30, 2017).

After the district court in Colorado granted Air Methods' motion to dismiss, the district court lifted the stay in this case. Plaintiffs then proceeded to file an amended class action complaint, bringing two causes of action. The first, titled "breach of implied contract," alleged that "Plaintiffs and Defendants had an implied contract concerning Defendants' transporting Plaintiffs," which "existed based on a promise that may be inferred from the parties' conduct." Though according to the complaint the parties had formed an implied-in-fact contract, that contract did not contain a definite price term. Plaintiffs alleged that as a result of this missing price term, Air Methods "voluntar[il]y under[took] to provide services with the understanding that a reasonable price would control." According to plaintiffs, Air Methods breached this implied contract by charging rates that "bear no reasonable relationship to [the cost of] the services rendered."

In their second cause of action,[2] plaintiffs requested declaratory relief. In particular, plaintiffs asked that in the event the district court rejected their breach-of-contract claim, the court issue a declaratory judgment stating that there were no enforceable contracts with Air Methods. In the absence of enforceable contracts, plaintiffs contended, Air Methods would no longer be able to recover charges against plaintiffs and others similarly situated pursuant to a breach-of-contract theory. Further, plaintiffs sought a declaration to the effect that Air Methods would be precluded from instituting collection actions based on a theory of implied-in-law contract or "quasi contract,"

---

[2] Plaintiffs' second cause of action is mislabeled "Count III" in the complaint.

because such state-imposed remedies were preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. Also under their request for declaratory relief, plaintiffs sought what appeared to be injunctive relief, in the form of "a prospective order from the Court requiring Defendants: (1) to cease charging for the transporting of patients without an express agreement or full disclosure as to the rates for mileage and helicopter base rates; and (2) to cease [] attempts to collect outstanding bills for which no agreement as to price exists from Plaintiffs and the Class members." Finally, plaintiffs sought as part of their second cause of action disgorgement or restitution by Air Methods of all overpayments.

On Air Methods' motion, the district court dismissed both claims in plaintiffs' complaint. The court held first that plaintiffs had not adequately pled breach of implied-in-fact contract. The court observed that the formation of an implied-in-fact contract requires "offer, acceptance, consideration, and a meeting of the minds." According to the court, plaintiffs' complaint was "completely void of facts demonstrating conduct sufficient to infer that the parties reached a tacit agreement before Defendants transported Plaintiffs to their respective hospitals." As plaintiffs had failed to allege the existence of a contract in the first instance, the court held that plaintiffs could not state a claim for breach of contract.

Although plaintiffs made clear that their breach-of-contract claim rested solely on a theory of implied-in-fact contract, the district court went ahead and concluded that the complaint could be read to allege the existence of an implied-in-*law* contract, also known as a constructive or quasi contract. As the district court explained, an implied-in-law contract is not a contract at all in that it does not rest on the parties' intentions. Rather, it is a legal fiction designed to prevent unjust enrichment when a party receives a benefit at another's expense.

The court held, however, that to the extent plaintiffs' complaint stated a claim for breach of implied-in-law contract (on the theory that even under an implied-in-law contract, Air Methods could charge only reasonable costs), that claim fell within the scope of the express preemption clause in the ADA. The ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Supreme Court has interpreted this preemption provision to cover state common-law rules that enforce contractual obligations not taken on voluntarily by airlines and their customers. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 287-88 (2014). An implied-in-law contract, in contrast to a traditional contract, does not involve mutual assent of the parties and instead "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." *Sabin v. Graves*, 621 N.E.2d 748, 751 (Ohio Ct. App. 1993). Therefore, the district court, in accordance with its earlier decision in *Medical Mutual of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771, 783 (N.D. Ohio 2018), and the Tenth Circuit's decision in *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1064-67 (10th Cir. 2019), concluded that claims to enforce implied-in-law contracts are preempted by the ADA.

Despite its determination that implied-in-law contract claims are preempted by the ADA, the district court declined to declare that Air Methods would be prohibited from collecting on its bills through an implied-in-law contract theory in a future action against the plaintiffs. The court acknowledged that preemption "cuts both ways," and would therefore prevent Air Methods from relying upon an implied-in-law contract theory to recover unpaid charges for its services. Air Methods, however, had not filed a counterclaim seeking to collect its fees. Accordingly, the court reasoned that it could "only speculate regarding the types of claims, if any, Defendants would

pursue." Given this uncertainty, the court declined to exercise its jurisdiction under the Declaratory Judgment Act. No class was ever certified. Plaintiffs timely appealed the district court's ruling on their breach-of-contract and declaratory-judgment claims.

The district court properly dismissed plaintiffs' first claim for breach of contract because plaintiffs failed to plead the existence of an implied-in-fact contract. While plaintiffs' complaint recites the elements of an implied-in-fact contract, it does not allege conduct which, if proven, would establish that plaintiffs formed contracts with Air Methods.

As the district court correctly stated, there are three types of contracts recognized in Ohio: express, implied in fact, and implied in law. *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989). Contracts implied in fact share the same elements as express contracts, including mutual assent of the parties. *See Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997). The difference between express and implied-in-fact contracts lies in how they are proven. *See id.* "In an express contract, the assent to the contract's terms is formally expressed in the offer and acceptance of the parties." *Reali Giampetro & Scott v. Society Nat'l Bank*, 729 N.E.2d 1259, 1263 (Ohio Ct. App. 1999). In an implied-in-fact contract, by contrast, "the meeting of the minds must be established by demonstrating that the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists 'as a matter of tacit understanding.'" *Id.* (quoting *State ex rel. Mallory v. Pub. Emp. Ret. Bd.*, 694 N.E.2d 1356, 1367 (Ohio 1998)). Contracts implied in law, on the other hand, are not truly "contracts" in that they do not require an agreement between the parties. *Legros*, 540 N.E.2d at 264. Instead, they exist "to prevent a party from retaining money or benefits which in justice and equity belong to another." *Id.*

Plaintiffs leave no doubt that they attempt to plead an implied-in-fact contract. Their complaint states that

> [a]lthough no express promise between Plaintiffs and Defendants existed, because offer and acceptance were not clearly established by spoken or written words, an implied contract existed based on a promise that may be inferred from the parties' conduct. These were real contracts based on mutual assent of the parties and an intentional manifestation of the parties' assent.

As Air Methods correctly points out, however, plaintiffs have not alleged *facts* suggesting they assented—expressly or tacitly—to Air Methods' transporting them to the hospital. In other words, there is no description of the conduct from which to infer a meeting of the minds. Indeed, the complaint lacks any factual details concerning the nature and circumstances surrounding plaintiffs' accidents. As the district court noted, "[b]oth Plaintiffs were air lifted after sustaining significant injuries. Plaintiffs do not allege that they were coherent and agreed to be transported, or that a family member signed documents on their behalf before they were transported. There is no allegation that any discussion took place between the parties prior to their transport." Plaintiffs' counsel's contention at oral argument that it would still be possible for plaintiffs to have entered into contracts while unconscious and without a personal representative to consent on their behalf simply does not comport with Ohio law, which requires a meeting of the minds for the formation of an implied-in-fact contract. *Legros*, 540 N.E.2d at 263; *cf. Morehead v. Conley*, 599 N.E.2d 786, 788-89 (Ohio Ct. App. 1991).

Plaintiffs' repeated conclusory assertions that they entered into implied-in-fact contracts with Air Methods are not sufficient to meet the pleading standard set forth in Federal Rule of Civil Procedure 8(a). The plausibility of a complaint is determined based on "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Following these basic pleading principles, we have previously affirmed the dismissal of a claim for breach of contract

where the plaintiff alleged merely that "there existed valid contracts." *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 430 (6th Cir. 2014) (internal quotation marks and alteration omitted); *see also Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) (holding that conclusory allegations regarding the element of breach failed to state a claim).

The plaintiffs' complaint in the related case of *Scarlett v. Air Methods Corp.* was similarly deficient. In granting Air Methods' motion to dismiss in *Scarlett*, the district court held that "[t]he facts in this case do not give rise to an implied-in-fact contract" because "[p]laintiffs have not alleged any meeting of the minds or conduct between the parties by which the Court could infer that they had an agreement before the plaintiffs were transported." 2018 WL 2322075, at *8. On appeal, the Tenth Circuit agreed with the district court and held that plaintiffs had failed to plead an implied-in-fact contract. *Scarlett*, 922 F.3d at 1066-67. The Tenth Circuit rejected a last-ditch effort by plaintiffs to effectively amend their complaint by arguing in their appellate brief that some of those transported by Air Methods "may have entered implied-in-fact contracts by expressly stating a desire to be transported because many of them were possessed of their faculties at the time of transport." *Id.* at 1066 (internal quotation marks omitted). The court further stated that this "one sentence argument about the creation of implied-in-fact contracts would not warrant reversal given the fact-intensive inquiry required to determine whether an implied-in-fact contract was formed." *Id.* at 1067.

In contending that their complaint is sufficient on its face to allege a claim for breach of implied-in-fact contract, plaintiffs first point to the allegation in their complaint that "Plaintiffs and Defendants had an implied [-in-fact] contract concerning Defendants' transporting Plaintiffs, as demonstrated by the fact that Defendants did so, and billed Plaintiffs for their transport services, thus allowing a factfinder to infer the existence of the parties' contracts by tacit understanding."

In addition, plaintiffs assert that "[t]he terms of the contract were implicit in the emergency circumstances, making it such that a discussion of terms was not necessary." The terms of this agreement were: "transport [plaintiff] to the nearest hospital, as quickly as possible."

But as the district court correctly determined, these allegations are not sufficient to plead the existence of an implied-in-fact contract and are instead consistent with an implied-in-law contract. Indeed, the factual scenario described in the complaint closely resembles the classic example of an implied-in-law contract, where a professional provides care to someone in need during a medical emergency. *See Morehead*, 599 N.E.2d at 788-89 (Ohio law); *ConFold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 958 (7th Cir. 2006); *Cotnam v. Wisdom*, 104 S.W. 164, 165-66 (Ark. 1907); Restatement (Third) of Restitution and Unjust Enrichment § 20 (2011). Contrary to plaintiffs' suggestion, an allegation that Air Methods sent plaintiffs a bill might just as well suggest an obligation implied in law. Further, the allegation that Air Methods expected plaintiffs to pay for air transportation services does not suffice to plead that plaintiffs actually agreed to pay. We came to a similar conclusion in *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 638 (6th Cir. 2001) (applying Michigan law), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 & n.2 (2010). In holding that plaintiff had failed to plead an implied-in-fact contract claim in that case, we explained that "[a] claim that one party was aware of the expectations of the other is a far cry from a claim that the first party agreed to a course of conduct that would fulfill those expectations." *Id.*

Byler's partial payment to Air Methods is also not indicative of his intent to be bound earlier at the time he was airlifted. Plaintiffs' reliance on *Medical Mutual of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771 (N.D. Ohio 2018), in this regard is misplaced. In that case, the court noted in dictum that conduct showing a pattern of past payment "could demonstrate a course

of dealing between the parties to prove a meeting of the minds." *Id.* at 780. It is one thing to say that past dealings between two parties may serve as evidence that those parties later entered into a contract. It is quite another to say that two unfamiliar parties formed a contract based on their post hoc conduct.

The closest plaintiffs get to describing their contractual intent is in paragraph 58 of their complaint, where they allege that "[t]o the extent Plaintiffs, at the time of contracting, had any understanding concerning Defendants' price, they understood that Defendants would charge them a reasonable price." There is no allegation, however, that this "understanding" on the part of the plaintiffs was communicated—directly or indirectly—to Air Methods in the form of an acceptance of terms. Under Ohio law, "[s]ecretly held, unexpressed intent is not relevant to whether a contract is formed." *Nilavar v. Osborn*, 711 N.E.2d 726, 733 (Ohio Ct. App. 1998). Furthermore, price was the one term that the parties did *not* agree upon. As stated in the complaint, "Plaintiffs and Defendants entered into contracts for Defendants' services, but their contracts did not include terms regarding pricing, rates, or charges." For these reasons, the allegation regarding plaintiffs' understanding of the price to be paid does not help them.

While the district court for the foregoing reasons properly dismissed plaintiffs' claim for breach of implied-in-fact contract, plaintiffs may still be entitled to relief on their second claim, for declaratory relief.[3] Plaintiffs argue that if the court does not find the existence of an implied-in-fact contract, the court should issue a declaratory judgment that (1) there is no enforceable contract between plaintiffs and Air Methods; (2) absent an enforceable contract, any attempt by Air Methods to collect excessive fees on the basis of an implied-in-law contract would be

---

[3] Although plaintiffs also brought claims for injunctive relief within the "declaratory relief" section of their complaint, they do not challenge the denial of injunctive relief on appeal. Those claims have therefore been abandoned. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

preempted by the ADA; and (3) "Defendants have no legally enforceable right to collect the prices charged in court proceedings, or other collection efforts, and Plaintiffs and the Class[] have no obligation to pay Defendants the prices charged."

The district court recognized that, in the event no contract was formed, Air Methods would likely attempt to collect its fees through an implied-in-law contract theory. The court noted that contracts implied in law are preempted by the ADA, and the court stated that insofar as Air Methods sought to recover fees from plaintiffs under such a theory, plaintiffs would be permitted to raise a preemption defense. None of the parties appears to dispute this conclusion on appeal. In any event, courts have been unanimous in the view that implied-in-law contract claims and related claims for unjust enrichment are preempted by the ADA because they are predicated on the lack of an agreement and thus involve a state-imposed obligation. *See, e.g.*, *Scarlett*, 922 F.3d at 1065; *Brown v. United Airlines, Inc.*, 720 F.3d 60, 69-71 (1st Cir. 2013); *Med. Mut. of Ohio*, 341 F. Supp. 3d at 781; *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1296 (N.D. Fla. 2018).

Dismissal of plaintiffs' declaratory-judgment claim was improper at this stage of the case. The district court relied on the fact that Air Methods had not counterclaimed for its fees, reasoning that the court could "only speculate regarding the types of claims, if any, Defendants would pursue." The Declaratory Judgment Act provides that the district court in a case of actual controversy "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Being dunned for fees that a party claims it does not owe would appear to be a paradigm case for declaratory judgment relief, especially in a case such as this where Air Methods has not put forth a theory for why it might be entitled to more-than-reasonable fees.

No. 19-4103, *Byler, et al. v. Air Methods Corp., et al.*

Although the district court has "unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), the district court abused its discretion in declining jurisdiction over plaintiffs' declaratory claim. The court did not apply the relevant factors in making its discretionary determination, and those factors in this case weigh strongly in favor of entertaining the declaratory judgment action.

The factors governing the exercise of jurisdiction, first introduced in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), are:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (alteration omitted) (quoting *Grand Trunk*, 746 F.2d at 326). Although the district court acknowledged these factors, the court did not appear to apply them and otherwise included only three lines of analysis explaining its decision to decline jurisdiction. A proper exercise of discretion under the Declaratory Judgment Act includes a "reasoned analysis of whether issuing a declaration would be useful and fair." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). We have also suggested that a failure to apply the *Grand Trunk* factors constitutes reversible error. *See Wilmington Sav. Fund Soc'y, FSB v. Kattula*, No. 19-1138, 2019 WL 7882540, at *1-2 (6th Cir. Nov. 6, 2019) (unpublished order); *AmSouth Bank*, 386 F.3d at 785; *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990), *abrogated on other grounds by Wilton*, 515 U.S. at 289-90. The district court's minimal analysis and its disregard of the *Grand Trunk* factors therefore warrants reversal in this case.

Moreover, it is within our discretion to weigh the *Grand Trunk* factors where the district court has not done so, rather than remanding for the district court to do so in the first instance. *See Mercier*, 913 F.2d at 277. That course is warranted here, where based on our review of the record, the factors point very strongly in favor of exercising jurisdiction.

The first two *Grand Trunk* factors—whether a declaratory judgment would settle the controversy between the parties and clarify the legal relations in issue—favor the exercise of jurisdiction. Plaintiffs asked the court for a declaration that (1) there is no enforceable contract and that (2) without a contract, any attempt to collect excessive fees from plaintiffs is preempted by the ADA. Were the district court to issue a declaration to this effect, Air Methods would be foreclosed from recovering excessive amounts under either a contract or quasi-contract theory in state court: the contract claim would fail for lack of an enforceable contract, while the quasi-contract contract claim would fail as preempted. Thus, the declaratory judgment would settle the controversy and clarify the legal relations between plaintiffs and Air Methods. Furthermore, an important consideration under the first two factors is whether the declaratory judgment would be res judicata in a parallel state-court proceeding. In *Bituminous Casualty. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004), for instance, declaratory jurisdiction was not warranted because the plaintiff in the parallel state-court litigation was not a party to the federal declaratory action and thus "any judgment in the federal court would not be binding as to him and could not be res judicata in the tort action." *Id.* In contrast, the parties to the instant federal litigation are likely to be the same as those in any future state-court collection actions, thereby giving preclusive effect to the federal-court declaratory judgment.

Third, this is not a case in which the declaratory remedy "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata,'" considerations

that would weigh against issuing declaratory relief. *Cole's Place*, 936 F.3d at 399 (quoting *Grand Trunk*, 746 F.2d at 326). Plaintiffs in this case face the looming uncertainty of not knowing whether they will be held liable for large sums of money. This is on top of the negative consequences that potentially flow from Air Methods' out-of-court collection efforts, including the accumulation of interest on the charged amounts. It is in these types of situations, where there is a threat of ongoing harm, that declaratory relief is most appropriate. *See AmSouth Bank*, 386 F.3d at 786. There is no indication in the record that plaintiffs have filed their federal lawsuit as a means of preempting a coercive suit by Air Methods in another forum. We have been "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550-51, 558 (6th Cir. 2008). In *Flowers*, for example, there was no finding of improper purpose on the part of the declaratory plaintiff despite the likelihood that the issue in the federal declaratory action would later come before a state court. *Id.* We noted that, while the federal action "may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives [plaintiff] the right to do precisely that." *Id.*

The fourth factor supports the exercise of jurisdiction because the declaratory action would not "increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Cole's Place*, 936 F.3d at 399 (quoting *Grand Trunk*, 746 F.2d at 326). This factor takes into consideration "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. This inquiry supports the exercise of declaratory jurisdiction because a central issue in this case is the scope of federal preemption, while the content of state law is clear. To the extent that issues of state law in the declaratory action later appear in coercive state-court suits, those issues will be simple and straightforward,

thus minimizing the advantage of deciding them in state court rather than in federal court. *See id.* In contrast, the fourth factor weighs against federal court declaratory relief when there are parallel state-court proceedings involving similar or identical issues of state law. In these instances, "a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* at 559 (alteration omitted) (quoting *Wilton*, 515 U.S. at 283). That is not the case here, however, as there is no allegation or evidence in the record that there are pending coercive actions by Air Methods against the plaintiffs in state court. At oral argument, plaintiffs' counsel confirmed that Air Methods has not yet initiated state-court collection actions against the named plaintiffs, and Air Methods did not indicate otherwise.

The fifth factor does not cut against the exercise of jurisdiction, as the alternative remedies available in this case are not "'better or more effective' than federal declaratory relief." *Cole's Place*, 936 F.3d at 401 (quoting *Grand Trunk*, 746 F.2d at 326). For instance, plaintiffs' option of raising preemption and other contract defenses in a future state-court action would be clearly inferior to a federal declaratory remedy given that it would require plaintiffs to wait until Air Methods sued to collect their fees. Another option would be for plaintiffs to bring a declaratory judgment action in state court under Ohio Revised Code § 2721.02. While this would likely entail similar advantages as a federal declaratory action, it is not clear that the state-law remedy would be superior. We recognized as much in *Flowers* when we determined that a declaratory remedy under Kentucky law would not be clearly superior to a federal declaratory judgment. 513 F.3d at 562.

Finally, the reasons given by the district court do not justify declining jurisdiction. While Air Methods has not attempted to collect its fees in federal court through a counterclaim, a party may properly obtain a declaration of rights for purposes of anticipated litigation in a different court.

*See, e.g.*, *Flowers*, 513 F.3d at 550-51, 556; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 451, 454 (6th Cir. 2003). Here, plaintiffs have alleged that Air Methods billed them for large sums and have initiated collection efforts. Accordingly, the district court's concern that "the court can only speculate regarding the types of claims, if any, Defendants would pursue" does not weigh against the exercise of declaratory jurisdiction.

We take no position on the merits of plaintiffs' declaratory claim. On remand, plaintiffs are free to argue that they did not form a contract with Air Methods or that the ADA preempts any Ohio law that permits Air Methods to collect excessive fees. For purposes of this appeal, we hold only that the district court's dismissal of plaintiff's declaratory-judgment action was premature.

For these reasons, we reverse the district court's dismissal of plaintiffs' declaratory-judgment claim. The judgment of the district court is affirmed with respect to plaintiffs' claim of breach of implied-in-fact contract.