**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

JEREMY LEE SCARLETT, on behalf of himself and all others similarly situated, et al.,

     Plaintiffs - Appellants,

v.

AIR METHODS CORPORATION; ROCKY MOUNTAIN HOLDINGS LLC,

     Defendants - Appellees.

----------------------------

UNITED STATES OF AMERICA,

     Intervenor - Appellee.

_____

RANDAL COWEN; KEITH KRANHOLD, Executor of the Estate of Kenneth Kranhold; GRIFF HUGHES; LANA HUGHES; YOLANDA O'NEALE, on behalf of themselves and all others similarly situated,

     Plaintiffs - Appellants,

v.

AIR METHODS CORPORATION; ROCKY MOUNTAIN HOLDINGS LLC,

     Defendants - Appellees.

No. 18-1247

No. 18-1249

------------------------------

UNITED STATES OF AMERICA,

Intervenor - Appellee.

_____

**Appeal from the United States District Court
for the District of Colorado
(Lead D.C. No. 1:16-CV-02723-RBJ)**

_____

Edward L. White, Edward L. White, P.C., Edmond, Oklahoma (Kerry D. Green, Edward L. White, P.C., Edmond, Oklahoma; Thomas Melvin Rogers, III, and Abby Caroline Harder, Lewis Roca Rothberger Christie, LLP, Denver, Colorado; Mario A. Pacella, Strom Law Firm, LLC, Columbia, South Carolina; Troy M. Frederick, Frederick Law Group, PLLC, Indiana, Pennsylvania; S. Alex Yaffe, Foshee & Yaffe, Oklahoma City, Oklahoma; Andrew P. Campbell and Stephen D. Wadsworth, Campbell Guin, LLC, Birmingham, Alabama; and Noble K. McIntyre, McIntyre Law Firm, Oklahoma City, Oklahoma, with him on the briefs), appearing for Appellants Jeremy Scarlett, Edward Adams, Joel Griffith, Gary Supeau, Reid Hardy, Michael Robertson, Jenny Stephens, Heather Bartley, Judd Bartley, Jodene Lopresto, Sarah Oelke, Bobbie Reed, Amy Vanzant, Thomas Wade, Jonathan Burleson, Jennier McCloskey, Warren Larson, Johnny Alexander, Kathleen Gore, Ann Koehler, Mary Gurnsey, Susan Schaefer, Ethan Galis, Angela Wallace, Joelle Rogers, Erick Murrer, Ivan Olfert, Scott Cresswell, William Ulmer, Emily McKinley, Clark Bailey, David Thrasher, Karen Shaw, Lauren Miller, and Russell Fulford.

Richard J. Burke (Jamie Weiss and Zachary A. Jacobs, with him on the briefs), Quantum Legal, LLC, Highland Park, Illinois, appearing for Appellants Randal Cowen, Keith Kranhold, Griff Hughes, Lana Hughes, and Yolanda O'Neale.

Lewis S. Yelin, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC (Joseph H. Hunt, Assistant Attorney General, Jason R. Dunn, United States Attorney, and Michael S. Raab, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC; Steven G. Bradbury, General Counsel, Paul M. Geier, Assistant General Counsel for Litigation and Enforcement, and Charles E. Enloe, Trial Attorney, Department of Transportation, Washington, DC, with him on the brief), appearing for Intervenor United States of America.

Christina F. Gomez, Holland & Hart LLP, Denver, Colorado (Matthew J. Smith and Jessica J. Smith, Holland & Hart LLP, Denver, Colorado; and David A. King and

Michael A. Cottone, Bass, Berry & Sims, PLC, Nashville, Tennessee, with her on the brief), appearing for Appellees Air Methods Corporation and Rocky Mountain Holdings LLC.

_____

Before **BRISCOE**, **LUCERO**, and **MORITZ**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

This is an appeal from the dismissal of two putative class action complaints as pre-empted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713. Defendants-Appellees Air Methods Corporation and Rocky Mountain Holdings, LLC provide air ambulance services, which means that they fly sick and injured individuals to hospitals for medical treatment. These flights are expensive; patients are regularly charged tens of thousands of dollars per flight. Defendants provided air ambulance services to Plaintiffs-Appellants, or in some cases to their minor children. Plaintiffs dispute their obligation to pay the full amounts charged by Defendants because Plaintiffs claim to have never agreed with Defendants on a price for their services.

Plaintiffs filed suit, asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), to determine what, if any, amounts they owe Defendants. Plaintiffs also seek to recover any excess payments already made to Defendants. Defendants moved to dismiss, arguing that Plaintiffs' claims are pre-empted by the ADA. The district court agreed and dismissed Plaintiffs' claims with prejudice. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

3

# I

The ADA was enacted in 1978 after Congress "determin[ed] that maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety and quality of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quotation marks, alteration, and ellipsis omitted). The enactment of the ADA marked the end of an era when the federal government and the states regulated airfares. "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision." *Id.* Per the pre-emption provision, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The scope of the pre-emption provision lies at the heart of this appeal.

There are two groups of plaintiffs—the Scarlett Plaintiffs[1] and the Cowen Plaintiffs.[2]  Because each group of plaintiffs pursues distinct claims, we discuss their allegations separately.  "We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo."  *Rosenfield v. HSBC Bank*, 681 F.3d 1172, 1178 (10th Cir. 2012).  In doing so, we "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Id.* (quotation marks omitted).

## A.  The Scarlett Plaintiffs

The Scarlett Plaintiffs allege that Defendants have sent them bills for air ambulance services provided to them or their children.  The average bill is for $47,000, but no bill has been paid in full.  The Scarlett Plaintiffs further allege that "Defendants' charges for air transport [were] not disclosed . . . in any way in advance of transport."  App. Vol. III at 385.  Most of the Scarlett Plaintiffs are insured; the average insurance payment for Defendants' services is $12,000.  But that leaves a substantial outstanding balance on each bill.  Defendants seek payment of the outstanding balances by hiring

---

[1] Plaintiffs in Appeal No. 18-1247 are Edward Adams, Joel Griffith, Gary Supeau, Reid Hardy, Michael Robertson, Jenny Stephens, Heather Bartley, Judd Bartley, Jodene Lopresto, Sarah Oelke, Bobbie Reed, Amy Vanzant, Thomas Wade, Jonathan Burleson, Jennifer McCloskey, Warren Larson, Johnny Alexander, Kathleen Gore, Ann Koehler, Mary Gurnsey, Susan Schaefer, Ethan Galis, Angela Wallace, Joelle Rogers, Erick Murrer, Ivan Olfert, Scott Cresswell, Jeremy Scarlett, William Ulmer, Emily McKinley, Clark Bailey, David Thrasher, Karen Shaw, Lauren Miller, and Russell Fulford (collectively, the "Scarlett Plaintiffs").

[2] Plaintiffs in Appeal No. 18-1249 are Randal Cowen, Keith Kranhold, Griff Hughes, Lana Hughes, and Yolanda O'Neale (collectively, the "Cowen Plaintiffs").

5

debt collectors and filing breach of contract lawsuits in state court. This practice is called balance billing.

The Scarlett Plaintiffs' Consolidated Class Action Complaint contains two causes of action. First, the Scarlett Plaintiffs allege that Defendants have breached implied contracts for the air ambulance services by charging more than "the fair market value of [their] services." *Id.* at 391. The Scarlett Plaintiffs seek "damages in the amount of the overcharges levied by Defendants." *Id.* at 392. Second, the Scarlett Plaintiffs seek expansive declaratory and injunctive relief. They desire a declaration stating (1) "that the ADA . . . does not apply to air ambulance carriers;" (2) that the ADA does not pre-empt their "breach of implied contract claims;" (3) that there are no enforceable contracts between the Scarlett Plaintiffs and Defendants because they never agreed on the price of the air ambulance services; (4) that Defendants have been unjustly enriched by charging more than the fair market value of their services; and (5) that the ADA's pre-emption provision violates the procedural and substantive components of the Due Process Clause of the Fifth Amendment. *Id.* at 392–97. The Scarlett Plaintiffs also seek to permanently enjoin Defendants' billing practices.

Defendants moved to dismiss, arguing that the Scarlett "Plaintiffs' lawsuit is pre[-]empted by the ADA because their claims rely on state laws . . . to challenge an air carriers' [sic] prices." App. Vol. IV at 577. Defendants also argued that the due process claim fails because the Scarlett Plaintiffs are afforded adequate process via the Department of Transportation's complaint procedures, and Congress did not act arbitrarily when enacting the ADA's pre-emption provision.

The United States intervened to defend the constitutionality of the ADA and offer its interpretation of how the ADA's pre-emption provision applies to the Scarlett Plaintiffs' breach of implied contract claim. The government agreed with Defendants that the Scarlett Plaintiffs had not alleged a violation of their procedural or substantive due process rights. As to the pre-emption question, the government argued that the district court first "need[ed] to determine whether, under the applicable state law [for each plaintiff's claim], the parties entered into an implied contract," App. Vol. V at 809, and then needed to assess whether the "terms . . . are enforceable consistent with the ADA," *id.* at 811.

The district court granted Defendants' motion to dismiss. First, the district court found that Defendants may assert the ADA's pre-emption provision as a defense because, under the ADA, they are air carriers who may provide air transportation. Turning to the merits of the complaint, the district court found that "the ADA pre[-]empts the Scarlett Plaintiffs' claims for breach of [implied] contract and injunctive and declaratory relief." *Id.* at 860 (emphasis omitted). The district court was "convinced that the . . . case depends on the application of state common law . . . to prevent unjust enrichment." *Id.* Finally, the district court found that the Scarlett Plaintiffs failed to plead a violation of the procedural or substantive components of the Due Process Clause of the Fifth Amendment.

## B. The Cowen Plaintiffs

The Cowen Plaintiffs allege that Defendants have sent them bills for providing air ambulance services to them, their children, and their decedents. The average bill was for

7

$48,500. None of the Cowen Plaintiffs have fully paid their bills, either because their health insurance only covered a portion of the bill or because they do not have health insurance. The average insurance payment to Defendants was $7,400. Defendants have hired, or in some cases threatened to hire, a collection agency to recoup the unpaid balances.

The Cowen Plaintiffs' Second Amended Complaint contains three causes of action. First, the Cowen Plaintiffs seek a declaratory judgment encompassing thirteen cumulative declarations. As we read the Cowen Plaintiffs' complaint, the requested declaratory judgment would state one of two things: the Cowen Plaintiffs did not enter into contracts with Defendants because they did not agree on a price; or, in the alternative, any contractual relationship that exists between the Cowen Plaintiffs and Defendants is implied under federal common law. Second, assuming there are valid contracts between the Cowen Plaintiffs and Defendants under federal common law, the Cowen Plaintiffs allege that "Defendants breached their contract[s] . . . by invoicing and balance billing . . . for charged amounts in excess of the reasonable value of the services provided." App. Vol. II at 316. Third, assuming there are no valid contracts between the Cowen Plaintiffs and Defendants, the Cowen Plaintiffs allege that they "are entitled to restitution of all sums paid [to Defendants] greater than the reasonable value of the services provided" under a theory of "unjust[] enrich[ment]." *Id.* at 318.

Defendants moved to dismiss. They argued that "[t]o the extent [the Cowen] Plaintiffs seek to rely on state law to challenge Defendants' prices, such claims are pre[-]empted by the ADA." App. Vol. III at 564. Defendants then addressed the claims

8

arising under federal common law and argued that "Congress has [not] granted federal courts authority to create federal common law" regarding contract claims against air ambulances. *Id.* at 566. Finally, Defendants argued that the Cowen Plaintiffs "cannot state a claim for equitable restitution" "because [they] . . . do[] not identify any particular funds in Defendants' possession that supposedly belong to Plaintiffs." *Id.* at 570.

The district court granted the motion to dismiss. First, the district court interpreted the claim for declaratory relief narrowly, to seek only a declaration that "federal common law is applicable" to the Cowen Plaintiffs' claims. App. Vol. V at 865. Based on this finding, the district court reasoned that all of the Cowen Plaintiffs' claims depend on the existence of federal common law. Because the district court found that there is no federal common law governing claims against air ambulance companies, the district court decided that the Cowen Plaintiffs' claims failed.

"Because [the district court found that all] plaintiffs' claims are pre[-]empted by the ADA as a matter of law, [the district court dismissed] both complaints . . . with prejudice." App. Vol. V at 868. All plaintiffs timely appealed.

## II

Before reaching the substance of the parties' pre-emption arguments, we must determine whether Defendants can assert the ADA's pre-emption provision as a defense. We have previously applied the ADA's pre-emption provision to prohibit state regulation of air ambulance rates. *EagleMed LLC v. Cox*, 868 F.3d 893, 904–05 (10th Cir. 2017) (holding that state regulation of air ambulance prices was "pre[-]empted by the [ADA] to the extent [the state law] set maximum reimbursement rates for air-ambulance services,"

9

but noting that no party "argue[d] that air ambulances are not 'air carriers' under the statute"); *Schneberger v. Air Evac EMS, Inc.*, 749 F. App'x 670, 673 n.4 (10th Cir. 2018) (same). We have never been called upon to directly answer the question of whether air ambulances are covered by the ADA.

Whether Defendants can raise the ADA's pre-emption provision as a defense is a question of statutory interpretation. "We review de novo a district court's statutory construction." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quotation marks omitted). "Our inquiry ends there if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (quotation marks omitted). "We evaluate statutory language by examining the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quotation marks omitted).

The ADA's pre-emption provision says: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). "'[A]ir carrier' means a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." *Id.* § 40102(a)(2). As is relevant for this appeal, "'air transportation' means . . . interstate air transportation." *Id.* § 40102(a)(5). "'[I]nterstate air transportation' means the

10

transportation of passengers . . . by aircraft as a common carrier for compensation" between two states. *Id.* § 40102(a)(25).

The ADA's pre-emption provision "expresses a 'broad pre-emptive purpose.'" *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (quoting *Morales*, 504 U.S. at 383). It applies to "provision[s] having the force and effect of law related to a price . . . of an air carrier that *may* provide air transportation," 49 U.S.C. § 41713(b)(1) (emphasis added), which includes "interstate air transportation," *id.* § 40102(a)(5). "[M]ay" means "[t]o be permitted to." *May*, Black's Law Dictionary (10th ed. 2014). Defendants are permitted to provide interstate air transportation because they have been certified to do so by the Department of Transportation, pursuant to 49 U.S.C. § 41101 and 14 C.F.R. § 298.1. Therefore, Defendants "may provide" interstate flights.

Even though Defendants "may provide air transportation," the Scarlett Plaintiffs argue that Defendants are not "air carriers" because they also provide intrastate flights. But the definition of "air carrier" is expansive and encompasses companies that provide both intrastate and interstate flights. A company is an air carrier when it is "undertaking *by any means, directly or indirectly*, to provide air transportation." 49 U.S.C. § 40102(a)(2) (emphasis added). To "undertake" means "[t]o take on an obligation or task." *Undertake*, Black's Law Dictionary (10th ed. 2014). Defendants have obtained the necessary certifications to provide interstate flights and, in fact, do provide interstate flights. Under the plain meaning of § 40102(a)(2), Defendants have undertaken to provide air transportation.

11

Finally, the Scarlett Plaintiffs argue that we should analyze whether Defendants are air carriers on a flight-by-flight basis. The Scarlett Plaintiffs point to nothing in the text or structure of the ADA that would indicate such an approach is appropriate. Allowing states to regulate the prices of intrastate flights would have far-reaching effects, including in the commercial air travel market. Under the Scarlett Plaintiffs' understanding of the ADA, even commercial airlines that primarily provide international and interstate flights would be subject to regulation in each state where they provide intrastate flights. Such an outcome, in which states could exert substantial regulatory power over airlines, is inconsistent with Congress's stated goal of deregulating air travel and leaving regulation to "competitive market forces." *Morales*, 504 U.S. at 378. Therefore, the district court correctly found that Defendants may raise the ADA's pre-emption provision as a defense.

### III

The central issue on appeal is whether Plaintiffs' claims are pre-empted by the ADA. "[P]re[-]emption [is] a legal issue subject to de novo review." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1096 (10th Cir. 2017). Under the ADA, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Supreme Court has "recognized that the key phrase [in § 41713(b)(1),] 'related to[,]' expresses a 'broad pre-emptive purpose.'" *Ginsberg*, 572 U.S. at 280 (quoting *Morales*, 504 U.S. at 383). Accordingly, the Court has "held that a claim 'relates to rates, routes, or services,' within the meaning of the

12

ADA, if the claim 'has a connection with, or reference to, airline rates, routes, or services.'" *Id.* (alterations omitted) (quoting *Morales*, 504 U.S. at 384).

Shortly after noting the breadth of the ADA's pre-emption provision, the Supreme Court recognized an exception in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995)—"the ADA pre-emption provision" does not bar "breach-of-contract claims" against airlines. *Ginsberg*, 572 U.S. at 281. "'Terms and conditions airlines offer and passengers accept,' [the Court explained], 'are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning of the ADA pre-emption provision.'" *Id.* (alterations omitted) (quoting *Wolens*, 513 U.S. at 228–29).

The Court clarified the scope of the *Wolens* exception in *Ginsberg*. At issue in *Ginsberg* was whether the ADA pre-empted a claim that an airline violated an implied covenant of good faith and fair dealing. *Id.* at 285. The Court explained that "common-law rules fall comfortably within the language of the ADA pre-emption provision" because "common-law rule[s] clearly ha[ve] 'the force and effect of law.'" *Id.* at 281–82 (quoting 49 U.S.C. § 41713(b)(1)). The good faith and fair dealing claim at issue in *Ginsberg* was pre-empted for two independent reasons—the applicable state law did not allow private parties to contract around the covenant, and the state law applied for policy reasons. *Id.* at 286–88. In reaching this holding, the Court left us with two rules. First, "[w]hen the law of a State does not authorize parties to free themselves from [a] covenant, a breach of covenant claim is pre-empted under the reasoning of *Wolens*." *Id.* at 287. Second, "[w]hen the application of [an] implied covenant depends on state

13

policy, a breach of implied covenant claim cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Id.* at 288.

Therefore, to survive the ADA's pre-emption provision, a claim that has a connection to the price of an air carrier's service must satisfy *Wolens* and *Ginsberg*. The parties do not dispute that Plaintiffs' claims relate to the price of Defendants' air ambulance services. This appeal therefore turns on whether Plaintiffs' claims satisfy *Wolens* and *Ginsberg*. Though the claims raised by the Scarlett Plaintiffs and those raised by the Cowen Plaintiffs are not identical, for purposes of our analysis, there are three types of claims at issue on appeal. First, all Plaintiffs allege that they formed implied contracts with Defendants for the provision of air ambulance services. Plaintiffs further allege that Defendants have breached these contracts by charging more than the reasonable value of the air ambulance services. Second, in the alternative, all Plaintiffs seek a declaration that there are no enforceable contracts between Plaintiffs and Defendants because the parties never agreed on a price for the air ambulance services. Third, all Plaintiffs allege that Defendants have been unjustly enriched by collecting more than the reasonable value of their air ambulance services.

Before discussing whether Plaintiffs' claims survive the ADA's pre-emption provision, we address the government's arguments about the impact of *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013), on the analytical framework established in *Wolens* and *Ginsberg*. In *Dan's City*, the Supreme Court was faced with the question of whether the Federal Aviation Administration Authorization Act of 1994 (FAAAA) "pre[-]empts a vehicle owner's state-law claims against a towing company regarding the

14

company's post-towing disposal of the vehicle." 569 U.S. at 259. The FAAAA's pre-emption provision generally "tracks the ADA's air-carrier pre[-]emption provision," but its reach is "massively limit[ed]" because it only applies to claims related to "the transportation of property." *Id.* at 261 (quotation marks omitted).

The towing company in *Dan's City* towed the plaintiff's car. *Id.* at 258. When the plaintiff did not promptly claim his car, the towing company sold it, retaining the proceeds as payment for towing and storing the car. *Id.* State law permitted the towing company's actions, subject to certain conditions. *Id.* at 257–58. The plaintiff sued the towing company, alleging that the towing company failed to comply with the statutory conditions necessary to lawfully sell his car. *Id.* at 259. The plaintiff's claims were dismissed as pre-empted by the FAAAA. *Id.* The Supreme Court held that the claims should have been allowed to proceed. *Id.* at 261.

The towing company argued that its actions were "related to [its] towing service," and therefore pre–empted, because "selling [the plaintiff's] car was the means by which [the towing company] obtained payment for the tow." *Id.* at 265 (quotation marks omitted). The Court rejected this argument because the towing company was trying to "have it both ways." *Id.* The towing company "c[ould not] rely on [the state's] regulatory framework as authorization for the sale of [the plaintiff's] car, yet argue that [the plaintiff's] claims, invoking the same state-law regime, are pre[-]empted." *Id.* Adopting the towing company's argument "would . . . leave vehicle owners without any recourse for damages [and] it would eliminate the sole legal authorization for a towing company's disposal of stored vehicles that go unclaimed." *Id.* There would be "no law

15

[to] govern resolution of a non-contract-based dispute arising from a towing company's disposal of a vehicle previously towed or afford a remedy for wrongful disposal." *Id.* The Court did not think that "such [a] design c[ould] be attributed to a rational Congress." *Id.*

Relying on *Dan's City*, the government argues that "if [D]efendants rely on state equitable principles as the basis for their compensation, they cannot at the same time prevent [P]laintiffs from relying on those same principles to argue that [D]efendants' charges are unreasonable." Gov't Br. at 21–22. The government's argument appeals to a sense of fairness and reason, but its sweeping scope goes unacknowledged. Just one year after deciding *Dan's City*, the Court held that the ADA pre-empts implied common law claims that attempt to vindicate "community standards of decency, fairness, or reasonableness." *Ginsberg*, 572 U.S. at 286 (quotation marks omitted). We need not attempt to rationalize the government's interpretation of *Dan's City* with the Court's subsequent holding in *Ginsberg* at this time because the premise of the government's argument is flawed.

Defendants argued in the district court that Plaintiffs have "a *contractual* obligation to pay for the air carrier services they received." App. Vol. IV at 626 n.2 (emphasis added). The district court understood Defendants to argue that Plaintiffs have a contractual obligation to pay, though the district court also recognized that "Defendants, for their part, never explain what kind of agreement they think exists." App. Vol. V at 857. The Scarlett Plaintiffs similarly understood "Defendants [to] have repeatedly invoked . . . state court jurisdiction to determine their right to recover [from Plaintiffs]

16

under contract theories." App. Vol. IV at 594. The Cowen Plaintiffs believe Defendants "have initiated collection efforts . . . to recover their contract rate/charged amount." *Id.* at 608. Even the government understood Defendants "not [to] dispute . . . that [Plaintiffs] have a contractual obligation to pay." App. Vol. V. at 809 (quotation marks omitted). But at oral argument, Defendants argued that Plaintiffs' obligation to pay arises under quantum meruit or a contract implied-in-law, which are equitable theories. Oral Argument at 32:57–41:29.

We will not base our analysis on an argument first made at oral argument. *Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 (10th Cir. 2016). Admittedly, it is confusing (and at least a little concerning) that Defendants have filed lawsuits in state court to collect payments allegedly owed without a consistent legal theory of why Plaintiffs owe them money.[3] But the merits of Defendants' state court claims against Plaintiffs are not before us in this appeal. If Defendants in fact rely on equitable principles in their state court lawsuits against Plaintiffs, Plaintiffs remain free to raise *Dan's City* and argue that Defendants are trying to have it both ways.

But for the purpose of this appeal, all parties proceeded in the district court based on Defendants' representation that they believe Plaintiffs "have a contractual obligation to pay for the air carrier services they received." App. Vol. IV 626 n.2. We rely on that representation and conclude that *Dan's City* is inapplicable. When Defendants proceed

---

[3] During oral argument on their motions to dismiss, the district court asked Defendants, "Why do [Plaintiffs] owe you money?" App. Vol. IV at 699. Defendants responded, "[I]t could be an express contract. It could be a contract implied in fact. It could be a contract implied in law." *Id.* at 700–01.

in state court on contractual claims and argue, in this court, that we apply the pre-emption principles from *Wolens* and *Ginsberg*, we are not faced with a situation in which "the pre[-]emption urged by [Defendants] . . . would eliminate the sole legal authorization" for Defendants' actions in state court. *Dan's City*, 569 U.S. at 265. Just the opposite. *Wolens* and *Ginsberg* hold that a standard breach of contract claim is not pre-empted by the ADA. *Ginsberg*, 572 U.S. at 281, 286–88.

Accordingly, we now analyze whether Plaintiffs' claims are pre-empted under *Wolens* and *Ginsberg*.

## A. Breach of Implied Contract

All Plaintiffs allege that Defendants have breached implied contractual relationships with them by charging more than the reasonable value of their air ambulance services.[4] While the Scarlett Plaintiffs allege that these implied contracts arise under state common law, the Cowen Plaintiffs allege that the implied contracts arise under federal common law. Because no federal common law exists to "resolv[e] . . . the

---

[4] In their briefing on appeal, the Scarlett Plaintiffs argue that they also alleged the existence of express contracts between themselves and Defendants. Scarlett Aplt. Reply Br. at 4. But, in their operative complaint, the Scarlett Plaintiffs only assert a claim for "Breach of Implied Contract." App. Vol. III at 389. In that claim, the Scarlett Plaintiffs allege that they "did not enter into either a written or oral agreement or [agree on] specific terms" with Defendants. *Id.* at 390. The Scarlett Plaintiffs cannot now attempt to amend their claim to allege a breach of express contract.

(continued . . .)

18

range of contract claims relating to airline rates," *Wolens*, 513 U.S. at 232, the district court correctly dismissed the Cowen Plaintiffs' breach of implied contract claim for failure to state a claim. Therefore, we confine our discussion to the Scarlett Plaintiffs' claim under state common law.

As the district court recognized, there are three types of contracts: express, implied-in-fact, and implied-in-law.[5] *Hercules, Inc. v. United States*, 516 U.S. 417, 423–24 (1996). "An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Hercules*, 516 U.S. at 424 (quoting *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)). "By contrast, an agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Id.* (quoting *Baltimore & Ohio R.R.*, 261 U.S. at 597).

---

[5] The Restatement of Contracts draws the same distinctions. "Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent." Restatement (Second) of Contracts § 4 cmt. a (1981) (Am. Law Inst., updated 2019). "As opposed to the inferred from fact ('implied in fact') contract, the 'implied in law' quasi-contract is no contract at all, but a form of the remedy of restitution." *Id.* § 4, note, cmt. b. "Quasi-contracts have often been called implied contracts or contracts implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Id.* § 4 cmt. b.

(continued . . .)

19

The state law relevant to each plaintiff's claim draws a similar distinction between express or implied-in-fact contracts (which are formed upon the mutual assent of the parties) and implied-in-law contracts (which courts enforce when there was no mutual assent).[6] The Scarlett Plaintiffs argue that they formed implied contracts with Defendants, even though they never agreed on a price. But the Scarlett Plaintiffs do not specify whether they have formed implied-in-law or implied-in-fact contracts. The distinction is critical for our pre-emption analysis because breach of contract claims premised on implied-in-law contracts are necessarily pre-empted for lack of mutual assent. Enforcing an implied-in-law contract "cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract," *Ginsberg*, 572 U.S. at 288, because an implied-in-law contract is an "obligation[] created by law for reasons of justice," Restatement (Second) of Contracts § 4 cmt. b.

---

[6] *See Turfgrass Grp., Inc. v. Ga. Cold Storage Co.*, 816 S.E.2d 716, 720 (Ga. Ct. App. 2018); *Ward v. Ward*, 797 S.E.2d 525, 529 (N.C. Ct. App. 2017); *Rogers v. Wright*, 2016 WY 10, ¶ 45, 366 P.3d 1264, 1278 (Wyo. 2016); *Allegro, Inc. v. Scully*, 791 S.E.2d 140, 145–46 (S.C. 2016); *Fortula v. Univ. of Kentucky*, 438 S.W.3d 303, 308–09 (Ky. 2014); *Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013); *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 737–38 (Neb. 2011); *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220–21 (Ind. 2009); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009); *Macsuga v. Moreno*, 2003 OK 24, ¶ 19, 66 P.3d 409, 413; *Kaiser Invs., Inc. v. Linn Agriprises, Inc.*, 538 So. 2d 409, 413–14 (Miss. 1989); *Jezmura v. Jezmura*, 330 N.E.2d 414, 420 (N.Y. 1975); *Tipper v. Great Lakes Chem. Co.*, 281 So. 2d 10, 13 (Fla. 1973); *Lach v. Fleth*, 64 A.2d 821, 826 (Pa. 1949); *Bailey v. Interstate Airmotive*, 219 S.W.2d 333, 338 (Mo. 1949); *Cascaden v. Magryta*, 225 N.W. 511, 512 (Mich. 1929).

(continued . . .)

Conversely, a breach of contract claim premised on an implied-in-fact contract could survive the ADA's pre-emption provision. Two questions are critical to the inquiry.[7] The first is whether the relevant state law allows the parties to contract around the implied price term. *Ginsberg*, 572 U.S. at 286–88. The second is whether the implied price term is "use[d] . . . to effectuate [the] intentions of the parties or to protect their reasonable expectations, . . . [or] to ensure that a party does not violate community standards of decency, fairness, or reasonableness." *Id.* at 286 (quotation marks and citations omitted). If the parties can contract around the implied price term and the implied price term "effectuate[s] the intentions of [the] parties or . . . protect[s] their reasonable expectations," then the claim is not pre-empted. *Id.* at 286–88; *see also Schneberger*, 749 F. App'x at 678 (explaining that the *Wolens* "exception applies to common-law contract doctrines but only insofar as the doctrines serve 'to effectuate the intentions of parties or to protect their reasonable expectations'" (quoting *Ginsberg*, 572 U.S. at 286)). A court could then supply an implied price term consistent with the parties' agreement when the implied-in-fact contract was formed. But if the claim fails

---

[7] We do not address the equally important question of whether, under the substantive state law applicable to a plaintiff's claim, two parties can form an implied-in-fact contract without agreeing on a price. *See* Restatement (Second) of Contracts § 33 cmt. a (1981) (Am. Law Inst., updated 2019) ("[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain."); *id.* § 33 cmt. e (discussing the circumstances under which an indefinite price term will defeat contract formation). If the state law relevant to a plaintiff's claim does not recognize an implied-in-fact contract without agreement on a price, then the plaintiff's allegation would fall short, not because it is pre–empted, but for failure to state a claim.

21

either requirement, it is pre-empted. *Ginsberg*, 572 U.S. at 287–88 (explaining that each requirement is an "independent basis" for pre-emption).

The district court found that "[t]he facts in this case do not give rise to an implied-in-fact contract" because the Scarlett "Plaintiffs have not alleged any meeting of the minds or conduct between the parties by which [it] . . . could infer that they had an agreement." App. Vol. V at 858. Therefore, the district court "understood [the Scarlett Plaintiffs' breach of implied contract claim] as a request that [it] . . . invoke state law that implies an obligation to pay for a service . . . to achieve equity and avoid injustice"— essentially "a contract implied in law." *Id.* Because the district court found that the Scarlett Plaintiffs relied on implied-in-law contracts, the district court dismissed their breach of implied contract claim as pre-empted by the ADA. *Id.* at 858–59. In effect, the district court made two findings. First, the district court found that the Scarlett Plaintiffs fail to allege the existence of any implied-in-fact contracts. Second, the district court found that, insofar as the Scarlett Plaintiffs' claim relies on implied-in-law contracts, the claim is pre-empted by the ADA.

On appeal, the Scarlett Plaintiffs do not contest the second finding, that claims based on implied-in-law contracts are pre-empted by the ADA. Rather, the Scarlett Plaintiffs focus on the district court's first finding and argue that some of those transported by Defendants "may have entered implied-in-fact contracts by expressly stating a desire to be transported because many of them were possessed of their faculties

22

at the time of transport."[8]  Scarlett Aplt. Br. at 16.  But this allegation—that the Scarlett Plaintiffs "stat[ed] a desire to be transported" and therefore entered into an implied-in-fact contract—does not appear in the Scarlett Plaintiffs' complaint.

To the contrary, the Scarlett Plaintiffs allege that "[p]rior to Defendants' undertaking to provide air ambulance transport services, no negotiation of contract terms took place and Plaintiffs and Defendants did not enter into either a written or oral agreement or [agree on] specific terms."  App. Vol. III at 390.  Moreover, in their opposition to Defendants' motion to dismiss, the Scarlett Plaintiffs argued that "[it] is undisputed Defendants transport patients with no . . . prior mutual assent to [the] terms of the transport . . . due to exigent circumstances."  App. Vol. IV at 589.  The Scarlett Plaintiffs cannot now argue that the district court erred in agreeing with a proposition that they themselves presented as undisputed.  *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1229–30 (10th Cir. 2003) (explaining that invited error doctrine prohibits a party from making an argument in district court and later "advocating a contrary position on appeal").

---

[8] In their Reply Brief, the Scarlett Plaintiffs argue that "[m]ultiple named plaintiffs alleged execution of a written 'Authorization and Consent' form contract provided by Defendants prior to transport, in which they promised to 'be personally and fully responsible for payment of [Defendants'] charges,' though the form contract gave no disclosure of what those charges might be."  Scarlett Aplt. Reply Br. at 4.  Setting aside the fact that this argument contradicts the allegation in the Scarlett Plaintiffs' complaint that they "did not enter into . . . written . . . agreement[s]" with Defendants, App. Vol. III at 390, we have previously explained that the Scarlett Plaintiffs do not assert a claim for breach of express contract.  The Scarlett Plaintiffs only allege a claim for breach of implied contract.  *Id.* at 389.

23

Even if we were to look past the inconsistent positions taken by the Scarlett Plaintiffs here and in the district court, their one sentence argument about the creation of implied-in-fact contracts would not warrant reversal given the fact-intensive inquiry required to determine whether an implied-in-fact contract was formed. The Scarlett Plaintiffs' argument is accompanied by a single citation to the record and no citation to applicable state contract law, which does not sufficiently support its argument that it adequately alleged the existence of implied-in-fact contracts. *See id.* at 1232 (explaining that "superficial argument [wa]s insufficient to garner appellate review," in part because the party did "not offer[] any record citations or legal authority in support of its argument"). Therefore, we will not disturb the district court's dismissal of the Scarlett Plaintiffs' breach of implied contract claim.

## B. Declaratory Judgment Regarding Existence of Enforceable Contracts

All Plaintiffs seek declarations that they have no contractual obligation to pay Defendants' bills because they never agreed on a price for Defendants' air ambulance services. The district court dismissed the claims for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, as pre-empted by the ADA. The Scarlett Plaintiffs do not discuss their declaratory judgment claim in their briefing on appeal and have therefore abandoned the issue. *Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1117 (10th Cir. 2018). In contrast, the Cowen Plaintiffs raise the issue on appeal and argue that their claim for declaratory judgment is not pre-empted because there is a ripe controversy about the existence of a contractual relationship. Defendants argue that "the district court was correct to dismiss" Plaintiffs' declaratory judgment claims because they

24

relied on "contract theories . . . to impose price terms on" Defendants. Aple. Br. at 27. Defendants maintain that the district court did not need to decide whether "the parties . . . enter[ed] into any enforceable contracts" to "dispos[e] of [the Cowen Plaintiffs'] claims." *Id.* at 43. But Defendants misstate and misinterpret the relief that the Cowen Plaintiffs seek, at least with respect to the declaration that no contracts were formed.[9]

As previously discussed, the district court can enforce contractual "terms and conditions . . . offer[ed by Defendants] and . . . accept[ed]" by Plaintiffs without running afoul of the ADA's pre-emption provision. *Ginsberg*, 572 U.S. at 281 (alteration omitted) (quoting *Wolens*, 513 U.S. at 228–29). To enforce a contract, a court must first confirm that a contract exists. Defendants have offered no reason why a court that can enforce a contract would be prohibited from "declar[ing] the rights and other legal relations" arising from a contractual relationship, or lack thereof. 28 U.S.C. § 2201. Though "[t]he Declaratory Judgment Act does not extend the jurisdiction of federal courts[,] it [does] enlarge[] the range of remedies available." *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (quotation marks and alterations omitted).

---

[9] Three paragraphs of the Cowen Plaintiffs' declaratory judgment claim relate to contract formation. The Cowen Plaintiffs seek the following declarations: that "Defendants and Plaintiffs . . . did not enter into any express contracts for Plaintiffs . . . to pay the amounts charged by the Defendants for the transportation services it provided;" that "Defendants have engaged in collection efforts against Plaintiffs . . . for amounts that Plaintiffs . . . did not expressly agree to pay;" and that "Defendants have engaged in collection efforts against Plaintiffs . . . for amounts concerning which there was no mutual assent manifest by the Plaintiffs . . . prior to the rendering of the services charged for." App. Vol. II at 314.

Therefore, the ADA does not prohibit a court from declaring that, because the parties never agreed on a price, no express or implied-in-fact contracts were formed. To enter such a declaration, a court would only need to examine whether there was the necessary mutual assent to form a contract. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 854 (8th Cir. 2009) ("Under *Wolens*, the issue of whether [a plaintiff] agreed to [a] fee as part of its contract with [a defendant] reads . . . like a . . . claim solely between the parties that does not derive from the enactment or enforcement of state law."); *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289–90 (5th Cir. 2002) (holding that defendant could raise fraudulent inducement as defense in breach of contract action without offending the ADA's pre-emption provision because "fraudulent conduct precludes the requisite mutual assent"); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) ("When all a state does is . . . determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule."); *cf. Ferrell v. Air EVAC EMS, Inc.*, 900 F.3d 602, 608 (8th Cir. 2018) (holding that ADA pre-empted claim for declaration that no contract existed between an air ambulance company and a patient because it was "not a contract-based claim" "as pleaded" given that it was "asserted on a class-wide basis, independent of the relationship between an air-ambulance operator and a particular patient").

Accordingly, the district court erred in interpreting the Cowen Defendants' declaratory judgment claim narrowly—to seek only a declaration that "federal common law is applicable," App. Vol. V at 865—and then finding that the claim was pre-empted. On remand, the district court can examine each of the Cowen Plaintiffs' allegations under

26

the applicable state law to determine whether an express or implied-in-fact contract was formed.

## C. Claims for Unjust Enrichment

Neither set of Plaintiffs adequately challenges the district court's dismissal of their unjust enrichment claims. The Scarlett Plaintiffs do not mention unjust enrichment in their Opening or Reply Briefs and have therefore abandoned the issue. *Stender*, 910 F.3d at 1117. The Cowen Plaintiffs, perplexingly, argue that their unjust enrichment claim survives pre-emption because "unjust enrichment is an equitable doctrine that *only* applies if there is no contract." Cowen Aplt. Br. at 39. The ADA's pre-emption provision prohibits courts from imposing an equitable remedy in the absence of a contract because the remedy would reflect the court's policy judgments, not the parties' mutual assent. *Wolens*, 513 U.S. at 232–33. Therefore, the district court did not err when dismissing the Cowen Plaintiffs' unjust enrichment claim as pre-empted by the ADA.

Before moving on from our pre-emption analysis, we reiterate that "[t]here is certainly some persuasive force to the . . . argument that federal pre[-]emption of state regulations in this field is not serving the congressional purpose of furthering efficiency, innovation, and low prices that was a motivating force behind the" ADA. *EagleMed*, 868 F.3d at 903 (quotation marks and alteration omitted).

> Due to the [ADA's] broad pre[-]emption provision, states have been unable to prevent air ambulance service providers from imposing exorbitant fees on patients who wrongly assume their insurance will cover the charges and are not in a position to discover otherwise or engaging in other unscrupulous pricing behaviors that would not be sustainable in a true free market but are easily perpetuated in the warped market of air-ambulance services.

27

*Id.* (quotation marks and ellipsis omitted). But as we have explained before, "[a]ny deficiency in the plain language of the [ADA] or the scope of its coverage must be corrected by Congress, not this court." *Id.* at 904.

We also note that, though the ADA limits patients' abilities to challenge the prices charged by air ambulance companies, patients are not without recourse. As just discussed, once an air ambulance company asserts that a patient has a contractual obligation to pay his bill, that patient can sue for declaratory relief to confirm that he is so obligated. If an air ambulance company has breached a contractual duty owed to one of its patients, that patient can sue for breach of contract. And individuals might be protected against improper debt collection methods by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, or an analogous state statute.

Finally, "Congress has given the Department of Transportation (DOT) the general authority to prohibit and punish unfair and deceptive practices in air transportation and in the sale of air transportation." *Ginsberg*, 572 U.S. at 288–89 (referring to 49 U.S.C. § 41712(a)). Just this past fall, Congress expanded the DOT's authority to regulate air ambulances. FAA Reauthorization Act of 2018, Pub. L. No. 115-254, 132 Stat. 3186. Under the new law, the DOT "shall review aviation consumer complaints received that allege a violation of law and, as appropriate, pursue enforcement or corrective actions that would be in the public interest." *Id.* at 3337. "In considering which cases to pursue for enforcement or corrective action . . . the [DOT] shall consider" "unfair and deceptive practices by air carriers (including air ambulance operators)," "the terms and conditions

28

agreed to between passengers and air carriers (including air ambulance operators)," and the "protection of air ambulance consumers." *Id.*

**IV**

The Scarlett Plaintiffs allege that "the ADA is unconstitutional as applied to air ambulance carriers and their patients," App. Vol. III at 394, because the ADA violates the procedural and substantive components of the Due Process Clause of the Fifth Amendment, *id.* at 395–96. We "review[] a challenge to the constitutionality of a statute de novo." *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1027 (10th Cir. 2008) (emphasis omitted).

Plaintiffs argue that the ADA violates the procedural component of the Due Process Clause of the Fifth Amendment by depriving them of a "state law cause of action to contest the price [of air ambulance services that] Defendants seek to impose." Scarlett Aplt. Br. at 32. "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Guttman v. Khalsa*, 669 F.3d 1101, 1113–14 (10th Cir. 2012) (quotation marks omitted). Plaintiffs' procedural due process claim fails at the first step because "a person has no property, no vested interest, in any rule of the common law." *Duke Power Co. v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 88 n.32 (1978) (alteration omitted) (quoting *Second Emp'rs' Liab. Cases*, 223 U.S. 1, 50 (1912)). "The Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object,

29

despite the fact that otherwise settled expectations may be upset thereby." *Id.* (quotation marks and citations omitted). And, as just discussed, Plaintiffs have various avenues for challenging their obligation to pay Defendants' bills, undermining Plaintiffs' allegations that the ADA has deprived them of a way to "contest the price" of Defendants' services.

The Scarlett Plaintiffs argue the ADA violates the substantive component of the Fifth Amendment's Due Process Clause because, while the ADA was meant to lower prices for air travel, prices for air ambulance services have "skyrocket[ed]." Scarlett Aplt. Br. at 37. Plaintiffs have not alleged a substantive due process violation because the "protection against economic legislation interfering with property interests . . . is severely limited." *KT&G Corp. v. Attorney Gen.*, 535 F.3d 1114, 1142 (10th Cir. 2008).

> To comport with the limited scope of substantive due process protection, economic legislation need only be rationally related to a legitimate government interest. Under rational basis review, therefore, there is no need for mathematical precision in the fit between justification and means, and the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it. Moreover, economic legislation comes to the Court with a presumption of constitutionality, and the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. Thus, it is difficult to exaggerate the burden that a party must overcome to demonstrate that economic legislation fails rational basis review.

*Id.* (quotation marks omitted).

The parties agree that, as intended by Congress when it deregulated the air travel industry by passing the ADA, the price of most air travel has fallen. That the ADA did not cause its desired effect in all corners of the air travel industry does not render the

30

ADA's pre-emption provision irrational. *Id.* At most, the high price of air ambulance services shows that the ADA is imperfect. Such a showing does not establish a substantive due process violation.

## V

Finally, the Scarlett Plaintiffs argue that Defendants are judicially estopped from raising the ADA's pre-emption provision as a defense to Plaintiffs' contract-based claims because "Defendants have filed multiple state-court breach-of-contract suits in multiple states to collect their charges, and they have also filed proof of claim forms in bankruptcies as well as filing claims against estates—all alleging a right to recover based on contracts and NOT asserting pre[-]emption." Scarlett Aplt. Br. at 27. The district court declined to apply judicial estoppel because "we have held that judicial estoppel only applies when the position to be estopped is one of fact, not one of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015). On appeal, the Scarlett Plaintiffs argue that we should broaden our view of judicial estoppel to include legal positions.

We need not revisit our prior ruling regarding judicial estoppel because the Scarlett Plaintiffs have not alleged facts sufficient to invoke judicial estoppel.

> The circumstances in which judicial estoppel applies are "not reducible to any general formulation of principle," [*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)]; nevertheless, the Supreme Court has identified three relevant factors. First, courts ask whether a party's later position is "clearly inconsistent" with its former position. *Id.* Second, courts ask whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). And third, courts consider "whether the party seeking to assert an inconsistent

31

position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

*BancInsure*, 796 F.3d at 1240. The Scarlett Plaintiffs have not shown that Defendants have "succeeded in persuading a court to accept" their position that state courts can enforce patients' alleged contractual obligation to pay their air ambulance bills. Therefore, even if judicial estoppel encompassed legal positions, the doctrine would not apply in this case. *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1209–10 (10th Cir. 2017).

**VI**

We AFFIRM the district court's dismissal of all Plaintiffs' breach of implied contract claims, the Scarlett Plaintiffs' declaratory judgment claim, all Plaintiffs' unjust enrichment claims, and the Scarlett Plaintiffs' due process claims; we REVERSE the district court's dismissal of the Cowen Plaintiffs' declaratory judgment claim, only with respect to the existence of contracts between the Cowen Plaintiffs and Defendants; and we REMAND for further proceedings.